# In the United States Court of Federal Claims

**No. 06-233C**

**(Originally Filed Under Seal November 5, 2008)**
**(Reissued November 20, 2008**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| **FEDERAL AIR MARSHALS(FAM) FAM 1 ET AL.,** | * | **Applicability of the FLSA, 29 U.S.C. §§ 201-219 (2008);** |
| | * | **Law of the Case Doctrine;** |
| **Plaintiffs,** | * | **Section 7 of the FLSA; "In Law Enforcement Activities";** |
| | * | **Section 207(k) "Work Period";** |
| **v.** | * | **Availability Pay; Overtime Premiums.** |
| **THE UNITED STATES,** | * | |
| **Defendant.** | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

***Stephen G. Seliger***, Chicago, IL, attorney of record for plaintiff, ***Joel M. Hellman*** and ***James G. Bradtke***, of counsel.

***Timothy Paul McIlmail***, Department of Justice, Washington, D.C., with whom was ***Assistant Attorney General Gregory G. Katsas,*** for defendant. ***Jeanne E. Davidson,*** Director, ***Bryant G. Snee***, Deputy Director, and ***Janessa Grady Gleming***, of counsel.

**OPINION & ORDER**

***Futey***, Judge.

This Fair Labor Standards Act class action is before the Court on the parties' cross-motions for summary judgment on the issue of liability. Plaintiffs, who are Federal Air Marshals ("FAM"), allege that defendant failed to pay them overtime compensation for hours they worked in excess of forty hours per week, in violation of section 207(a)(1) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219 (2008). Plaintiffs' motion is brought on behalf of the 1,805 FAMs who have filed consents in this case, and is based upon evidence related to the claims of seven "test plaintiffs" designated by the parties for the purpose of determining liability. In support of their claims, plaintiffs assert that the FLSA applies to

plaintiffs and that it requires an employer to pay an employee at a rate not less than one and one-half times the regular rate at which he or she is employed for all hours the employee works in excess of forty hours in a workweek. Furthermore, plaintiffs aver that each of the test plaintiffs worked more than forty hours in at least one week during the two-year limitations period prior to filing his or her consent but was not paid overtime compensation for that week.

Defendant, on the other hand, contends that 29 U.S.C. § 207(a)(1) does not apply to plaintiffs, and asserts several bases in support of its contention: first, the plain meaning of 49 U.S.C. § 40122(g)(1) is that all Transportation Security Administration ("TSA") employee compensation is governed by a personnel management system, not the FLSA, and plaintiffs' claims are therefore inconsistent with § 40122; second, Congress intended for FAMs receiving availability pay to be subject to earnings constraints imposed on criminal investigators - including exemption from FLSA overtime compensation; and finally, 29 U.S.C. § 207(a)(1) does not apply because plaintiffs are "in law enforcement activities" to whom a seven-day work period applies under § 207(k). In addition, defendant maintains that the Availability Pay received by FAMs is compensation for overtime work, that plaintiffs fail to establish they are entitled to compensation for unrecorded or off-duty hours because they have not demonstrated that any specific activity for which they seek compensation is not *de minimus*, and that plaintiffs' off-duty physical fitness and firearms training does not constitute compensable overtime work pursuant to the FLSA.

Currently before the Court are Plaintiffs' Motion For Partial Summary Judgment; Plaintiffs' Proposed Findings Of Uncontroverted Fact; Defendant's Cross-Motion For Summary Judgment, And Opposition To Plaintiffs' Motion For Partial Summary Judgment; Defendant's Proposed Findings Of Uncontroverted Fact; Defendant's Response To Plaintiffs' Proposed Findings Of Uncontroverted Fact; Plaintiffs' Combined Reply In Support Of Motion For Partial Summary Judgment And Response In Opposition To Defendant's Cross-Motion For Summary Judgment; Plaintiffs' Response To Defendant's Proposed Findings Of Uncontroverted Fact; Defendant's Reply To Plaintiffs' Response To Defendant's Cross-Motion For Summary Judgment; Plaintiffs' Supplement In Support Of Their Motion For Partial Summary Judgment And In Opposition To Defendant's Cross-Motion For Summary Judgment; and Defendant's Response To Plaintiffs' Supplement In Support Of Their Motion For Partial Summary Judgment And In Opposition To Defendant's Cross-Motion For Summary Judgment.

1.      Background

Plaintiff FAMs are the primary operational employees of the FAM Service, which functions under the direction of the TSA. The FAM Service was transferred

to the TSA from the Federal Aviation Administration ("FAA") under the Aviation and Transportation Security Act ("ATSA") in 2001. For purposes of the occupational series definitions utilized by the Office of Personnel Management ("OPM"), FAMs are classified as law enforcement officers in the 1801 series ("General Inspection, Investigation and Compliance"). The main responsibility of the FAM Service is to execute flight missions, meaning that FAMs travel on commercial aircraft and seek to detect and neutralize security threats. They are authorized to carry firearms and make arrests on passenger flights. Mandatory handgun qualifications are administered quarterly, and FAMs are required to demonstrate safe and proper handling of their weapon and to achieve a passing score on the Practical Pistol Course; however, off-duty firearms training is not an employment requirement. Similarly, FAMs are subjected to quarterly physical examinations, assessments, an on-site training routine, and an individualized fitness program, but off-duty physical fitness training is not an employment requirement. FAMs have a basic workweek of forty hours that does not extend over more than six of any consecutive seven days, and an administrative workweek of any period of seven consecutive twenty-four hour periods designated in advance.

Prior to the FAM Service's transfer to the TSA, FAMs had been subject to the FAA personnel management system, implemented pursuant to the 1996 Department of Transportation Appropriations Act, 49 U.S.C. § 40122. In 2002, the TSA implemented its current pay policy for FAMs pursuant to the same authority. Under the current personnel management system, FAMs are classified as "exempt" for FLSA purposes and are not paid FLSA overtime compensation. Nonetheless, each FAM who averages two additional hours of work on regular workdays on an annual basis receives a twenty-five percent enhancement to his or her base salary ("Availability Pay"). Availability Pay was established by the FAA in 2001. The FAM Service Director certifies each FAM's eligibility for Availability Pay annually. The FAM Availability Pay is included as part of a FAM's basic pay for purposes of retirement benefits, and is subject to the "restrictions and earning limitations imposed on criminal investigators under 5545a." 5 U.S.C. § 8331(3)(E)(ii) (2008).

Plaintiffs filed a complaint with this Court on March 27, 2006, seeking back pay and other relief for violations of the FLSA. On June 23, 2006, defendant filed a Motion to Dismiss for failure to state a claim upon which relief may be granted, asserting that the FLSA does not apply to FAMs because the Federal Aviation Administration Revitalization Act of 1995 ("FAARA"), 49 U.S.C. § 40122(g) (2008), exempts plaintiffs' original employer, the FAA, from the FLSA. This Court denied defendant's motion, finding that the FLSA does indeed apply to plaintiffs because the FLSA is not a "Federal personnel law" from which the FAA is exempted under FAARA. On November 13, 2007, the case was certified as an opt-in collective action. The case was bifurcated in order to consider separately the issues of liability and damages; only the issue of liability is currently before the Court. Plaintiffs filed

a Motion for Partial Summary Judgment on behalf of 1,805 plaintiffs on February 15, 2008, and defendant filed a Cross-Motion for Summary Judgment on March 28, 2008. After both parties filed numerous responses and replies, the motions became ripe on August 28, 2008. The Court now examines the merits of the pending motions.

2.    Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 247 (1986); ***Jay v. Sec'y of Dep't of Health & Human Servs.***, 998 F.2d 979, 982 (Fed. Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. ***Anderson***, 477 U.S. at 248. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. ***Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.***, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987). Alternatively, if the moving party can show there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. ***Celotex***, 477 U.S. at 325. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, to whom the benefits of all favorable inferences and presumptions run. ***Litton Indus. Prods., Inc. v. Solid State Sys. Corp.***, 755 F.2d 158, 163 (Fed. Cir. 1985); ***H.F. Allen Orchards v. United States***, 749 F.2d 1571, 1574 (Fed. Cir. 1984).

The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of each party's motion. ***Prineville Sawmill Co., Inc. v. United States***, 859 F.2d 905, 911 (Fed. Cir. 1988)(citing ***Mingus Constructors, Inc. v. United States***, 812 F.2d 1387, 1390 (Fed. Cir. 1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. ***A Olympic Forwarder, Inc. v. United States***, 33 Fed. Cl. 514, 518 (1995). It, therefore, does not follow that if one motion is rejected, the other is necessarily supported. ***Id***. Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. ***Id***. (citing ***Corman v. United States***, 26 Cl. Ct. 1011, 1014 (1992)).

  A.    *Jurisdiction*

The jurisdiction of the United States Court of Federal Claims is set forth in the Tucker Act. 28 U.S.C. § 1491 (2008). Under the Tucker Act, the court "shall have jurisdiction to render judgment upon any claim against the United States

founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. § 1491(a)(1). The Tucker Act is jurisdictional only, and "does not create any substantive right enforceable against the United States for money damages." ***United States v. Testan***, 424 U.S. 392, 398 (1976); ***Tippett v. United States***, 185 F.3d 1250, 1254 (Fed. Cir. 1999). Rather, the Tucker Act "merely confers jurisdiction upon [this court] whenever the substantive right exists." ***Testan***, 424 U.S. at 398 (internal citation omitted). "When a contract is not involved, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a constitutional provision, a statute, or a regulation that provides a substantive right to money damages." ***Tippett***, 185 F.3d at 1254-55.

The FLSA, which plaintiffs allege defendant has violated, provides a substantive right to money damages under § 216(b):

> Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b) (2008). Because plaintiffs allege a violation of § 207 of the FLSA, they have properly invoked the jurisdiction of this Court.

    B.    *Applicability of the FLSA*

Plaintiffs' claim is premised upon its assertion that defendant violated § 207(a)(1) of the FLSA. Specifically, § 207(a)(1) states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  Defendant, however, asserts that the FLSA does not apply to plaintiffs.  Because defendant's cross-motion for summary judgment rests upon the threshold issue of whether the FLSA applies to FAMs at all, plaintiffs' motion for summary judgment will be rendered moot if defendant's motion is granted.  The Court therefore begins by addressing defendant's arguments.

1.  Are plaintiffs' claims inconsistent with 49 U.S.C. § 40122?

Defendant claims that plaintiffs are not covered by the FLSA because TSA employee compensation - including overtime compensation - is governed by a personnel management system pursuant to 49 U.S.C. §§ 114(n) and 40122(g)(1). The Court considered and rejected this exact argument when deciding defendant's motion to dismiss.  *See* **Federal Air Marshals v. United States**, 74 Fed. Cl. 484 (2006).  Nevertheless, defendant asserts that "an extraordinary circumstance" has occurred, warranting the Court's reconsideration of its prior ruling pursuant to the law of the case doctrine.  Specifically, defendant argues that the Federal Circuit decision in **Brodowy v. United States**, 482 F.3d 1370 (Fed. Cir. 2007), makes it clear that 49 U.S.C. §§ 114(n) and 40122(g)(1) allow for the TSA and FAA to set employees' overtime compensation under a personnel management system.  *See* Def.'s Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Partial Summ. J. at 33-35 (citing **Brodowy**, 482 F.3d at 1372 n.1).  Plaintiffs, on the other hand, contend that nothing in **Brodowy** requires reconsideration of the Court's previous ruling, and that the Court's decision should stand.  The Court agrees with plaintiffs.

The law of the case doctrine, "[a]s most commonly defined, . . . posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  **Arizona v. California**, 460 U.S. 605, 618 (1983).  Nevertheless, a court may revisit a prior decision in the face of "extraordinary circumstances[,] such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  **Christianson v. Colt Indus. Operating Corp.**, 486 U.S. 800, 817 (1988)(citing **Arizona**, 460 U.S. at 618 n.8).

In **Brodowy**, ten FAA air traffic controllers brought suit contending they were entitled to lost wages because the government failed to provide them with a pay increase when they transferred to higher level facilities.  482 F.3d at 1372.  The pay increase to which the plaintiffs claimed they were entitled was part of a new pay system associated with the privatization of many FAA control tower operations.  *Id*. The privatization plan had been halted, however, and the FAA had established a personnel management system pursuant to § 40122(a) to govern compensation in the interim.  *Id*. at 1373.  Because the interim personnel management system did not provide for a pay increase, the court found that the case should have been dismissed for failure to state a claim upon which relief could be granted.  *Id*. at 1373-75.  In a footnote, the court addressed the authority for creation of the personnel management

system: "[i]n 1995 and 1996, Congress enacted legislation authorizing the FAA Administrator to implement a new personnel management system for FAA employees, including fixing the compensation and benefits of employees and officers." *Id*. at 1372 n.1 (citing Pub. L. No. 104-50, § 347, 109 Stat. 460 (1995); 49 U.S.C. §§ 106(l), 40122(a)). Defendant contends that this footnote presents an "extraordinary circumstance" because it confirms the FAA's right to "fix[] the compensation" of its employees notwithstanding the requirements of the FLSA. Def.'s Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Partial Summ. J. at 33-34.

Nonetheless, the footnote is not a "holding" by the court as defendant asserts; it does nothing more than rephrase the relevant section of the FAARA, which provides:

> [N]otwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, *compensation*, and location of personnel.

49 U.S.C. § 40122(g)(1) (emphasis added). This Court previously examined the FAARA and held that it exempts FAA employees only from Federal personnel laws. ***Federal Air Marshals***, 74 Fed. Cl. at 487. The FLSA is not a Federal personnel law; rather, the FLSA is a universally applicable employment law and the FAA's personnel management system is subject to its provisions. *Id*. Because there is no extraordinary circumstance here warranting the Court's reconsideration of its earlier decision, the Court's earlier finding stands.

> 2. Did Congress intend for FAMs to be exempted from the FLSA?

Defendant also contends that Congress intended for FAMs receiving Availability Pay to be subject to the earning constraints imposed upon criminal investigators, which defendant asserts include exemption from the FLSA overtime provisions. Defendant premises this argument upon 5 U.S.C. § 8331(d)(E)(ii), which provides that, for purposes of retirement benefits, basic pay of FAMs includes Availability Pay, subject to the restrictions and earning limitations imposed on criminal investigators under 5 U.S.C. § 5545a (2008). Moreover, because criminal investigators are expressly excluded from the FLSA under 29 U.S.C. § 213(b)(30), defendant argues that FAMs must be similarly exempt. Additionally, defendant argues that because Congress intended for the same earning limitations imposed upon criminal investigators to apply to FAMs, that Congress must have intended to limit

the form of overtime paid to FAMs to that described in 5 U.S.C. § 5542(d) (2008), which further defines how overtime is paid to criminal investigators.

Plaintiffs, on the other hand, contend that § 8331(3)(E)(ii) relates only to the pension-credibility of FAMs' availability pay, not to whether FAMs are FLSA exempt. Specifically, plaintiffs aver that the restrictions and earning limitations referenced in 5 U.S.C. § 8331(3)(E)(ii) are not restrictions on the types and amounts of compensation to be paid to FAMs. Furthermore, plaintiffs point to the fact that Congress did not expressly exempt FAMs from the FLSA, despite Congress's express recognition of FAMs in § 8331.

There are several statutory provisions at issue here, and it is upon their interaction that defendant bases its arguments. Section 8331(3)(E)(ii) specifically addresses the basic pay of FAMs for the purpose of civil service retirement: it defines "basic pay" as including "availability pay . . . received after September 11, 2001, by a Federal air marshal of the Department of Transportation, subject to all restrictions and earning limitations imposed on criminal investigators *under section 5545a*." (emphasis added). The issue therefore becomes whether the "restrictions and earning limitations imposed upon criminal investigators under section 5545a" include FLSA exemption. Section 5545a, however, does not address FLSA exemption. *See* 5 U.S.C. § 5545a. Rather, it defines the required hours of work or "unscheduled duty" time investigators must complete on an annual basis, it excludes certain types of premium pay from the umbrella of availability pay, and it sets the rate of availability pay. *See generally **Id***. "In construing a statute or regulation, we commence by inspecting its language to ascertain its plain meaning." **Diefenderfer v. Merit Sys. Prot. Bd.**, 194 F.3d 1275, 1278 (Fed. Cir. 1999). "If the terms of the statute or regulation are unambiguous, no further inquiry is usually required." ***Id***. "When we find the terms of a statute unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances." **Freytag v. Commissioner**, 501 U.S. 868, 873 (1991)(internal citation omitted). Because nothing in the plain language of § 5545a exempts criminal investigators from the overtime provisions of the FLSA, FAMs are not exempted from the overtime provisions of FLSA under § 8331(3)(E)(ii).

Defendant, however, attempts to stretch the reach of § 8331(3)(E)(ii) beyond the restrictions of § 5545a by asserting that because criminal investigators are exempted from the FLSA under 29 U.S.C. §§ 213(a)(16) and (b)(30), and because FAMs are "subject to all restrictions and earning limitations imposed on criminal investigators," that FAMs are similarly exempted from the FLSA. Conversely, plaintiffs argue that Congress would have expressly exempted FAMs from the FLSA if it intended to do so. Plaintiffs point first to the fact that Congress *did* expressly recognize FAMs in § 8331(3)(E)(ii), and second, by means of example, to Congress's express recognition of Customs Service pilots and their treatment as "criminal

investigators" for purposes of 29 U.S.C. §§ 213(a)(16) and (b)(30).  *See* 5 U.S.C. § 5545a(i).[1]

When interpreting the FLSA and its numerous, specific exemptions, the court must "giv[e] due regard to the plain meaning of statutory language and the intent of Congress."  ***A.H. Phillips, Inc. v. Walling***, 324 U.S. 490, 493 (1945).  These exemptions only apply when the employment falls "plainly and unmistakably within [an exemption's] terms and spirit."  ***Arnold v. Ben Kanowsky, Inc.***, 361 U.S. 388, 392 (1960).  That is not the case here.  If Congress had intended for FAMs to be exempted from the overtime provisions of the FLSA, it could - and would - have expressly stated that intention.  Congress amended 5 U.S.C. § 8331 to expressly address FAMs.  Congress could have specifically exempted FAMs from the FLSA by amendment to 5 U.S.C. § 5545a, as it did with the Customs Service pilots, or by amendment to the FLSA itself.  Because Congress failed to do so, FAMs do not fall plainly or unmistakably within an exemption to the FLSA.  The Court therefore concludes that the correct interpretation of the interaction between 5 U.S.C. §§ 8331(3)(E)(ii) and 5545a does not exempt plaintiffs from the overtime provisions of the FLSA.  Because the FLSA applies to plaintiffs, the Court must next consider plaintiffs' arguments.

        C.     *Have plaintiffs proven each element of an FLSA claim?*

In order to prevail on an FLSA overtime claim, plaintiffs must show that they "performed work for which [they were] not properly compensated."  ***Anderson v. Mt. Clemens Pottery Co.***, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in* ***United States v. Cook***, 795 F.2d 987, 990-91 (Fed. Cir. 1986).  Specifically, plaintiffs must demonstrate that they have worked hours in excess of their applicable workweek under the statute, and that they have not been compensated at least one and one-half times their regular rate for those hours.

        1.     <u>Does a forty-hour workweek apply to plaintiffs?</u>

Plaintiffs claim that they are entitled to overtime compensation for hours worked in excess of forty per week pursuant to 29 U.S.C. § 207(a)(1).  Defendant asserts that, if the FLSA applies to plaintiffs, § 207(k) of the FLSA dictates the maximum number of hours plaintiffs must work before defendant is required to pay overtime compensation.  Section 207(k) provides:

---

[1] "For the purpose of this section, section 5542(d) of this title, and *section 13(a)(16) and (b)(30) of the Fair Labor Standards Act of 1938*, such pilot [employed by the United States Customs Service who is a law enforcement officer as defined under section 5541(3)] shall be deemed to be a criminal investigator as defined in this section."  5 U.S.C. § 5545a(i) (emphasis added).

> No public agency shall be deemed to have violated subsection (a) with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if - . . .
> 
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours . . . bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). Section 207(k) is not a true exemption from the strictures of the FLSA; it "adjusts the permissible length of the workweek but does not completely remove specified employees from the FLSA's protection." **Brock v. City of Cincinnati**, 236 F.3d 793, 810 (6th Cir. 2001). Essentially, the § 207(k) partial exemption requires employees to work forty-three hours per week before overtime compensation is mandated. *See* 29 C.F.R. § 553.230 (2008). Thus, § 207(a) dictates the applicability of the FLSA, but § 207(k) "soften[s] the impact of the FLSA's overtime provisions on public employers" by "rais[ing] the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week." **O'Brien v. Town of Agawam**, 350 F.3d 279, 290 (1st Cir. 2003).

The Court must undertake a two-prong inquiry to determine whether an employer falls under the § 207(k) partial exemption to § 207(a) liability. First, the plaintiff employees must be "in fire protection" or "in law enforcement" activities; second, the employer must have adopted a qualifying work period. *See* 29 U.S.C. § 207(k); **O'Brien**, 350 F.3d at 290. Whether an employer satisfies both prongs and § 207(k) applies is an issue of fact, which the employer must prove by "clear and affirmative evidence." **Barefield v. Village of Winnetka**, 81 F.3d 704, 710 (7th Cir. 1996); **Birdwell v. City of Gadsden, Ala.**, 970 F.2d 802, 805 (11th Cir. 1992)(citing **Donovan v. United Video, Inc.**, 725 F.2d 577, 581 (10th Cir. 1984)).

(a) *Plaintiffs are engaged "in law enforcement activities"*

The OPM has promulgated regulations regarding what work constitutes "law enforcement activities" for purposes of a § 207(k) exemption. Specifically, the regulation states that:

> Law enforcement activities involve work directly and primarily concerned with: (1) Patrol and control functions that include patrolling an area to enforce law and order and to protect the lives, property, and civil rights *of individuals* through the prevention and detection of criminal acts; responding to complaints, violations, accidents, and emergencies; investigating for clues at the scene of a crime, interviewing witnesses, and evaluating evidence to locate suspects; and apprehending and arresting persons suspected of, or wanted for, criminal violations under a statutorily prescribed arrest authority.

5 C.F.R. § 551.216(b)(1) (2008)(emphasis added).  The regulation goes on to describe those employees who are engaged in law enforcement activities for the purposes of § 207(k):

> 1) Employees in positions properly classified in the Police series, and employees in positions that would be otherwise classifiable in that series if covered by classification criteria of chapter 51 of title 5, U.S. Code;
> (2) Employees in positions properly classified as Border Patrol Agents, Customs Patrol Officers, and *other employees whose primary duties involve similar patrol and control functions performed for the purpose of detecting and apprehending persons suspected of violating criminal laws*; . . .

5 C.F.R. § 551.216(c) (emphasis added).  The regulation further delineates employees *not* engaged in law enforcement activities, including "[e]mployees whose primary duties concern the protection of Government property;" and "[e]mployees wh[ose] . . . duties primarily involve: (i) [e]xamining or inspecting products, premises, property, or papers . . . to enforce or obtain compliance with laws and regulations . . .; or (ii) [p]lanning and conducting investigations covering . . . persons or organizations seeking, claiming or receiving Federal benefits, permits or employment."  5 C.F.R. § 551.216(d).

The decision in **Huff v. DeKalb County, GA**, 516 F.3d 1273 (11th Cir. 2008), is instructive.  There, the court undertook a heavily factual inquiry to determine that the job duties of paramedics employed by the DeKalb County Fire & Rescue Services satisfied the statutory definition of "employee in fire protection activities," in order to render the paramedics subject to the § 207(k) partial exemption from § 207(a).  *See Id.* at 1279-81.  A factual inquiry here renders the same result.  Not only has the OPM classified FAMs as "law enforcement officers," but plaintiffs' job duties place them squarely within the regulatory definitions for purposes of a § 207(k) exemption.

The main job responsibility of FAMs is to "execute flight missions," which means to travel on "commercial aircraft and seek to detect and neutralize security threats." Pls.' Mem. in Supp. of Mot. for Partial Summ. J. on Liability at 8 (citing 49 U.S.C. § 44917(a) (2008)). FAMs are "authorized to carry firearms and to make arrests on passenger flights." *Id*. (citing 49 U.S.C. §§ 44903, 44917(a)). FAMs also review intelligence and security reports; perform surveillance and surveillance detection on airport premises; review aircraft seat maps, least-risk bomb location procedures, evacuation procedures and operational tactics; and prepare and file reports on suspicious activity or incidents. *Id*. at 9. FAMs are required to constantly be vigilant for suspicious activity whenever they are on airport premises. *Id*. at 8.

There is no question that FAMs serve to protect the lives of individuals, rather than property. They do so through the "prevention and detection of criminal acts;" response to complaints, violations and emergencies; investigation and evaluation of evidence to locate suspects, and by "apprehending and arresting persons suspected of, or wanted for, criminal violations under a statutorily prescribed arrest authority." 5 C.F.R. § 551.216(b)(1). Moreover, plaintiffs do not deny that they are engaged in law enforcement activities. Plaintiffs are therefore engaged in law enforcement activities for the purposes of 29 U.S.C. § 207(k).

(b)     *Defendant has adopted a qualifying work period*

Because we have determined that plaintiffs are in law enforcement, we must consider whether the TSA has adopted a qualifying work period of "at least 7 but less than 28 days" under § 207(k). "Work period" is a term of art that is not the equivalent of a "workweek," "administrative workweek," or "pay period;" nevertheless, the FLSA does not specifically define the term. ***Wood v. City of Elgin***, No. 07-05418, 2008 U.S. Dist. LEXIS 2948, at *8 (N.D. Ill., Jan. 14, 2008). The Department of Labor, however, has promulgated the following regulation:

> As used in section 7(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and the legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. Once the beginning and ending time of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within the period.

29 C.F.R. § 553.224(a) (2008).

The employer bears the burden of proving it has adopted a qualifying work period by "clear and affirmative evidence." **Birdwell**, 970 F.2d at 805 (citing **Donovan**, 725 F.2d at 581). This is "ordinarily not a high hurdle;" employers need not specifically mention § 207(k) in their employment policies, they must simply establish a "bona fide, fixed, recurring period of between 7 and 28 days." **O'Brien**, 350 F.3d at 291 n.21; *see also* **Brock**, 236 F.3d at 810.

In the **Birdwell** case, the court considered whether § 207(k) applied to police officers of the City of Gadsden. 970 F.2d 802. The central issue was whether the work period adopted by the city was a traditional workweek, requiring overtime pay after forty hours, or a seven-day work period under § 207(k), requiring overtime pay after forty-three hours. *Id*. at 805. It was established through testimony that the police officers had a seven day workweek, within which the officers worked five days and had two days off. *Id*. Significantly, the five work days and two days off would vary from one week to another. *Id*. On this basis, the court concluded that the city had adopted a seven-day work period and § 207(k) did apply. *Id*.

Here, defendant argues that the TSA established a seven-day administrative workweek for FAMs, and has therefore established a § 207(k) work period. Plaintiffs, on the other hand, assert that FAMs have a five-day basic workweek and, therefore, a five-day work period. The TSA Human Resources Management Policy states that when establishing the workweek, the administrator "must specify the days and hours within the administrative workweek that constitute the basic workweek," and when establishing work schedules, the administrator shall provide that "the basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive." App. to Def.'s Cross-Mot. for Summ. J. at 142, ¶ 4(a)(1); 143, ¶ 4(b)(1)(b). The same policy defines the basic workweek for full time employees as "a 40-hour workweek that does not extend over more than 6 of any 7 consecutive days." *Id*. at 141, ¶ 3. Like the work period in **Birdwell**, the human resources policy here reflects a floating five-day workweek within a set, seven-day administrative workweek. The test plaintiffs' depositions corroborate this finding. *See* App. Volume I, to Pls.' Mot. for Partial Summ. J. at Ex. J.[2] The evidence before the Court therefore demonstrates that defendant established a work period of seven consecutive days under § 207(k). Because defendant has satisfied both prongs of the § 207(k) inquiry, defendant is exempted from the overtime provisions of § 207(a) until the number of hours worked by an FAM within a seven-day work period exceeds forty-three hours.

---

[2]Each sample time sheet reflects a five-day workweek within a seven-day administrative workweek; the two days off are not always consecutive, and they vary from employee to employee and sometimes from period to period.

        2.      <u>Have FAMs worked in excess of forty-three hours per week?</u>

It is uncontroverted that plaintiffs have worked specific workweeks of at least fifty hours-per-week. *See* Def.'s Resp. to Pls.' Proposed Findings of Uncontroverted Fact at 15, ¶ 37; 22, ¶ 55. FAMs are required to annually average two unscheduled overtime hours per non-excludable workday in order to receive Availability Pay. *Id*. at 10, ¶ 27. The FAM Service Director has annually certified that *all* FAMs have met the eligibility requirements for Availability Pay. *Id*. at 22, ¶ 55. Moreover, a 2004 study conducted by defendant at the Chicago Field Office showed that the work hours per mission workday as reported on FAM time sheets averaged approximately 10.5 hours per day. *Id*. at 12-13, ¶ 32.

Defendant, however, has attempted to argue that plaintiffs have not satisfied this inquiry for two reasons. First, defendant claims that plaintiffs failed to establish that they are entitled to compensation for *unrecorded* or *off-duty* hours because they have not shown that such activities are not *de minimus*. Second, defendant asserts that off-duty time plaintiffs spent engaged in physical fitness or firearms training does not constitute compensable overtime work under the FLSA. Defendant relies on *Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006), for the proposition that an employee must demonstrate that work is compensable pursuant to the FLSA in order to prove liability under that statute.[3] Nonetheless, these arguments ignore the fact that plaintiffs have already established that they worked compensable hours in excess of the threshold under the FLSA. Only the issue of liability is currently before the Court. Plaintiffs have worked in excess of forty-three hours per week. Therefore, the only question remaining is whether plaintiffs have been properly compensated for their overtime hours.

        3.      <u>Does FAM Availability Pay constitute overtime compensation?</u>

Defendant argues that plaintiffs have, in fact, already been compensated for overtime work because they have received FAM Availability Pay. Specifically, defendant asserts that FAM Availability Pay is an overtime premium because it is tied to the number of hours worked, and is not a "premium in the form of a lump sum" paid "without regard to the number of overtime hours worked," within the meaning of 29 C.F.R. § 778.310 (2008). Therefore, defendant contends that FAM Availability Pay may be credited toward overtime compensation.

---

[3]The Court further notes that the substantive issue in *Adams*, whether time spent commuting to and from work is compensable under the FLSA, is irrelevant to the issues in this case.

Conversely, plaintiffs contend that FAM Availability Pay is a fixed sum and is not calibrated to the number of hours worked in any week. Because fixed biweekly compensation cannot be credited toward FLSA overtime compensation as a matter of law, plaintiffs assert that FAM Availability Pay does not constitute overtime compensation.

We begin by examining the statutory and regulatory constraints on the interaction between premium pay and FLSA overtime compensation. The FLSA requires employers to pay employees for hours worked in excess of their statutorily defined maximum work period - in this case, forty-three hours per week - at a rate no less than one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207. An employee's "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). Section 207(e) goes on, however, to "list[] eight categories of remuneration that need not be included in the calculation of the regular rate." **Murphy v. Town of Natick**, 516 F. Supp. 2d 153, 157 (D. Mass. 2007)(citing 29 U.S.C. § 207(e)). Of those eight categories excluded from the calculation of the regular rate, three address overtime premiums. *See* 29 U.S.C. § 207(e)(5)-(7). Moreover, "[t]he FLSA specifically permits an employer to offset the amount owing for FLSA overtime by the 'premium component' of any overtime paid" pursuant to § 207(e)(5), (6), or (7). *Id*. at 160 (citing 29 U.S.C. § 207(h)).

At issue here is whether FAM Availability Pay is a premium component encompassed by § 207(e)(5), (6), or (7); if so, FAM Availability Pay constitutes overtime compensation. If, on the other hand, FAM Availability Pay is not an overtime premium, it is included in the calculation of an FAM's regular rate.[4] Neither § 207(e)(6), nor § 207(e)(7) applies to FAM Availability Pay; the former addresses premiums paid for work on weekends or holidays, and the latter addresses premiums paid pursuant to a contract or collective bargaining agreement. Section 207(e)(5), however, addresses premiums "paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of . . . the maximum workweek applicable to such employee." The regulations promulgated by the Department of Labor make clear that premiums for "certain hours worked" under § 207(e)(5) are overtime premiums. *See* 29 C.F.R. § 778.201(b). Additionally, "[t]he overtime rate . . . is a rate per hour," and "[t]o qualify under section 7(e)(5), the overtime rate must be greater than the regular rate, either *a fixed amount per hour* or *a multiple of the nonovertime rate*, such as one and one-third, one and one-half or two times that rate." 29 C.F.R. § 778.308 (emphasis added). Any premium rates other than those described in § 207(e)(5),(6), or (7) are not

---

[4]The regular rate is calculated "by dividing [an employee's] total remuneration for employment (excluding statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

overtime premiums, and "must be included in the employee's regular rate before statutory overtime compensation is computed; no part of such premiums may be credited toward statutory overtime pay." 29 C.F.R. § 778.207(a).

Under the clear and unambiguous language of the FLSA and its regulations, FAM Availability Pay does not constitute overtime compensation. FAM Availability Pay is a twenty-five percent premium pay. *See* Def.'s Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Partial Summ. J. at 13; Pls.' Mot. for Partial Summ. J. at 13. FAMs are required to work an average of two hours in addition to their scheduled eight-hours per day to qualify for FAM Availability Pay; the hours are certified by the FAM Service Director on an annual basis. *Id*. at 19; Pl.'s Mot. for Partial Summ. J. at 13. As defendant explains, "the two additional hours [worked per day] constitute a 25 percent increase in the number of regularly scheduled hours worked on a non-excludable day - providing the basis for the 25 percent availability payment." Def.'s Reply to Pls.' Resp. to Def.'s Cross-Mot. for Summ. J. at 11. Moreover, under the FAM Pay Policy, FAMs receive Availability Pay as compensation for *all* unscheduled work, not just the first two hours per day.[5] *Id*. at 20.

FAM Availability Pay is neither a "fixed amount per hour," nor a "multiple of the nonovertime rate." It is a flat twenty-five percent enhancement to a FAM's base salary. Furthermore, it is not greater than the regular rate. Defendant itself admits that the twenty-five percent pay enhancement compensates a twenty-five percent work enhancement. Finally, it is not pay for "certain hours;" rather, it is a "flat percentage of the employee's basic pay which remains fixed regardless of the number of . . . hours worked in a particular pay period." *See* **Slugocki v. United States**, 816 F.2d 1572, 1578 (Fed. Cir. 1987)(finding that administratively uncontrollable overtime premium pay is calculated as part of the regular rate and is not excluded as overtime compensation under 29 U.S.C. § 207(e)(5)). FAM Availability Pay therefore does not qualify under a § 207(e) exclusion; it must be included in the calculation of an FAMs' regular rate.

FAM Availability Pay does not constitute FLSA overtime compensation; however, plaintiffs are not entitled to a windfall of an additional payment at one and one-half times their regular rate for hours for which they have already been compensated. *See* **Zumerling v. Devine**, 769 F.2d 745 (Fed. Cir. 1985). In **Zumerling**, the court considered and rejected the contention that premium pay received by firefighters constituted an overtime premium under 29 U.S.C. § 207(e)(5). Nevertheless, the court found that firefighters were only owed an additional one-half

---

[5]FAMs are generally scheduled for flight missions of eight to ten hours, but frequently work more than ten hours in a day, for various reasons. *See* Pls.' Mot. For Partial Summ. J. on Liability at 15.

times their regular rate for each overtime hour for which the firefighters had already been compensated at their regular rate. *See **Id***. at 752-753. Similarly here, the Availability Pay already received by plaintiffs for overtime work shall offset the total amount of overtime compensation plaintiffs are due. Pursuant to 29 U.S.C. § 207(k), FAMs are entitled to total overtime compensation at one and one-half times their regular rate for each hour worked in excess of forty-three hours per week. Because plaintiffs are compensated for ten-hour days, or fifty-hour weeks, plaintiffs have already been partially compensated for seven overtime hours per week.[6] Thus, FAMs are entitled to additional remuneration for each of those seven hours, such that their total remuneration equals one and one-half times their regular rate. For all additional overtime hours, plaintiffs are entitled to remuneration of one and one-half times their regular rate. Plaintiffs shall therefore receive total compensation equaling one and one-half times their regular rate for all overtime hours worked.

3.  Conclusion

For the foregoing reasons, Plaintiffs' Motion For Partial Summary Judgment On Liability is ALLOWED as follows:

> 1) defendant is liable to plaintiffs for overtime compensation at one and one-half times plaintiffs' regular rate for all hours worked in excess of forty-three hours per week;
> 2) Availability Pay already received for work performed by plaintiffs in excess of forty-three hours per week shall offset the total amount of overtime compensation owed to plaintiffs.

Defendant's Cross-Motion For Summary Judgment is DENIED. There being no reason for delay, the Clerk of the Court is hereby directed to enter judgment pursuant to RCFC 54(b) in accordance with this Opinion. No Costs.

IT IS SO ORDERED.

<div style="text-align:right">

s/Bohdan A. Futey
**BOHDAN A. FUTEY**
**Judge**

</div>

---

[6]Plaintiffs are compensated at their base rate for the first eight hours of work per day, and receive a twenty-five percent upwards adjustment for two additional hours of unscheduled work per day, in the form of Availability Pay.